The next matter, number 24-1299, Lesbia Asusina Alay v. Pamela J. Bondi. At this time, would counsel for the petitioner please come to the podium and introduce himself on the record to begin? Good morning, Your Honors. Randy Olin from Miss Alay. May I reserve two minutes, please? Thank you. Cancellation of removal requires that the applicant establish that exceptional and extremely unusual hardship to her qualifying relatives, who in this case are her two young children. In matter of Montreal, the seminal case on cancellation of removal, the board noted the factors to consider in assessing the hardship. Importantly, these factors, though not extreme in themselves, must be considered in the aggregate. Here, Miss Alay contends that the agency ignored, misperceived, or inadequately analyzed the factors and has reviewed them in her brief in an attempt to point out the deficiencies. The government has argued that many of these factors do not apply because the hardship to the applicant does not matter. It has to be hardship only to the qualifying relatives. There are two quick answers to that. The first is that the immigration judge in his decision added an addendum of law in which he stated that the relevant factors were the same eight factors that Miss Alay raised in her brief. More importantly, the law says that the hardship factors to the applicant may be considered insofar as they relate to the children. And in this case, in a number of areas, the court did not do that, where clearly the factors that affected Miss Alay relate to her children. May I give you a couple of examples? The first one is that the government says that we cannot consider, the court can't consider whether or not she has another way to adjust status or come back into the country. Well, that's dead wrong because in a matter of raciness, the unavailability of a way to get back into the country was perhaps a major factor in the grant of cancellation of removal and perhaps the most compelling one in that case. So that is clearly wrong on the part of both the judge and the government, the agency and the government. And, in fact, the agency, not only did the agency not interpret that correctly, but the IJ actually said almost the opposite, that, well, in ten years her son will be old enough to petition for her to come back. That's completely wrong also. The fact that she can't come back is a checkmark in the column of factors that support the grant of cancellation of removal. Another area that the government says that we're not able to review is the political and economic conditions in Guatemala because they say that they only affect Ms. Olay herself. But the fact that she is going to be in a country where she was raped, where her mother was extorted, is going to affect those children every day of their lives. I'm sure a day will not go by when they do not consider and are troubled by that fact. And, in fact, the youngster who testified expressed concern and worry for his mother being in Guatemala. So that's another one that the agency just did not consider in the right way. There's also other factors, the loss of income. Half of the family's income is now gone. And that clearly is going to affect, common sense tells you that, that clearly will affect the lives of the children here in a very major way with respect to the elder of the two young sons in that he will not be going to college now. He will not be able to afford college because of the loss of the income. The agency noted that there would be a loss of income, but didn't say anything about the fact that it will cost this boy his opportunity to go to college. Again, the separation. How, though, is any of that substantially beyond what ordinarily happens when deportation occurs? Let me answer you this way, if I may, Judge. My answer is yes, it does. It wasn't a yes or no question, but go ahead. Yes, it will. How is it? Let me try and answer that, Judge. The agency said the following things. They acknowledged that there would be educational detriment, that the boy won't be going to college. Excuse me. They acknowledged that there would be emotional harm. The judge said that uprooting kids at this stage of their development is particularly harsh. The agency noted that the financial loss would directly impact the children's lives. The IJ called this a highly sympathetic case and complimented Ms. O'Leary for the secure, excuse me, stable environment that she created for her family, which has now been disrupted. My question is, in light of these one, two, three, four, five acknowledgements of hardship, where is the aggregation? Instead of aggregating these five factors, what the agency does is they refer to their well-worn platitudes that economic harm in and of itself is not enough. Well, it's not in and of itself. There are four other hardship factors that the agency has acknowledged. And things of the like. It's an ordinary result of deportation that these things are generally insufficient to, but there's no aggregation of these at least five different factors of hardship that the agency itself has acknowledged to some degree. Are you going for a substantial evidence review or abuse of discretion?  It's been 91 years. For 91 years there have been discretionary relief, forms of discretionary relief within the immigration laws. And for 91 years the abuse of discretion standard has stood the test of time, and that's the one that we use today. I was going to refer to this whole discretionary thing in just a moment, but if I could just digress for one sec, Your Honor. In the Duarte de Martinez case that was just decided a month or so ago, Judge Barron, you wrote that the agency must undertake, quote, an individualized inquiry and consider the particular circumstances and facts presented of the minor children. And this court vacated the board's decision on the grounds that it did not do that. In this case, given these multiple hardship factors, I will admit that it's not, to the same degree as existed in the Duarte case, the hardship, but it's the same idea. Well, I didn't understand your brief to be saying that. I thought your brief was saying this rose to the level of an extraordinary and unusual hardship. It does. That's an argument in Duarte that they didn't do individualized review, and that, therefore, was the legal error. May I respond? That is, in both cases, the exceptional and extremely unusual hardship standard has been satisfied. I'm just noting that, I mean, there are degrees of error on the part of the agency. In the Duarte case was a spectacularly, in my view, erroneous decision. This one's not quite as spectacular, but it still satisfies the exceptional, extreme and unusual hardship standard. Thank you. Thank you, Counsel. At this time, would Counsel for the Respondent please introduce herself on the record to begin? Good morning, Your Honors, and may it please the Court. My name is Jessica Strokos, and I represent the United States Attorney General. This Court should deny the petition for review because substantial evidence supports the agency's determination that the petitioner in this case did not establish that there was exceptional and extremely unusual hardship to her qualifying relatives for two children for purposes of cancellation of removal. Assuming we need to decide the standard of review, why would we apply the substantial evidence test? Am I right that that's, by statute, the test we use for determining a fact question? That's correct, Your Honor. And didn't Wilkinson hold that the determination of whether something is exceptional and unusual or whatever the exact words are, meaning that standard is a question of law? Yes, Your Honor. However, Wilkinson How can we say that a statute that says you use that standard for determining a question of fact is the standard we would use for reviewing a question of law? I would point this Court to U.S. Bank as well as the Third Circuit's decision in Wilkinson on remand from the Supreme Court. Essentially, where there is a mixed question of law and fact, where, as in the context of the hardship inquiry, it is a fact-based, fact-grounded question of law. Well, the facts of it are, but the law part of it isn't. So I just don't follow. I mean, if I just followed the statute, you're saying that some legal questions are fact questions? No, Your Honor. I'm saying that what the Supreme Court held in Wilkinson removed some of these questions from a de novo review. Because it said it was a question of law, because that statute said questions of law were exempt. Yes, Your Honor. So you're saying the statute that referred to it as a question of law should be read to treat this as a question of law, but this statute should be read to treat the same question as a question of fact? No, Your Honor. I'm not saying it should be treated as a question of fact. It is a mixed question of law and fact. Well, the fact part of it we would review for substantial evidence. Correct, Your Honor. What's the fact part of it? The fact part of it are, I mean, there are the, well, I should say, Your Honor, this Court would not review the fact part. So that's what I'm saying. So I don't quite follow what the argument is. The only part we can review is the law part, which is whether it meets the standard. I thought that was the thing that was treated as a law question in Wilkinson. Correct. You're saying, nonetheless, a statute that refers to a fact question covers that exact same question? I'm saying, Your Honor, that the Supreme Court instructed that the standard of review should be deferential. And that would be true if we applied an abuse of discretion standard, wouldn't it? It would be. However, abuse of discretion is not an appropriate standard of review for the reasons that the Third Circuit pointed out on remand in Wilkinson, as well as the fact that this Court has historically, the courts have historically applied abuse of discretion to discretionary questions, which Wilkinson said this is not. Well, it also said it was a law question. It did. And now you're saying we should treat it as a fact question. It said it was a mixed question of law and fact that removed it from the jurisdictional bar. And the statute that had the jurisdictional bar allowed it to be removed if it was a question of law, correct? Correct. Not a question of mixed. It just said question of law. And, Your Honor, I have to rely on what the Supreme Court said, which was it was a mixed question of law and fact. And therefore a question of law for purpose of that statutory provision in the INA, correct? Correct. And yet here's another provision of the INA that refers to fact questions. And you're saying the same question is now a fact question, even though in that other provision of the INA it's a law question. I am not saying that it is a question of fact, Your Honor. I'm saying it's a mixed question of law and fact that the Supreme Court has instructed should be reviewed under a deferential standard of review. And under U.S. Bank, the Supreme Court looked at which in these types of circumstances where there's a mixed question of law and fact presented that the court should In U.S. Bank, did they apply the substantial evidence test? No, they applied clear error, but that made sense in the context of that case. Because that is the standard that the court would apply to factual questions. Under the INA and under the APA, the courts apply substantial evidence to factual questions. That is the basis of the reasoning why the government believes that this court should apply substantial evidence review. Maybe these reduce to the same thing, but if we treated it as a de novo law question, but for sufficiency challenges, which would be the legal question, does it meet the standard, the court has been suggesting, as you're suggesting, that there is a spectrum in which sometimes they're more fact dependent and sometimes they're more law dependent. That's the thrust of the point? Because that's a different argument than the substantial evidence statute in the INA, which by terms applies only to fact questions, governs the test. That's different than a legal argument that when applying the question of, when deciding the law question, since it comes up as a sufficiency challenge, we should be sensitive to the different types of sufficiency challenges that can be presented. Yes, Your Honor, and I would emphasize, though, that a de novo standard of review is not appropriate under the Supreme Court's decision in Wilkinson. The court was very clear that the exceptional, extremely unusual hardship determination is a mixed question and that review should be deferential to the agency. And the government would ask that this court determine the standard of review so that the parties can have a better understanding of how to present their cases moving forward so that this issue is not continuously litigated. I take it your view is that on de novo review you still win? Your Honor, I would not argue that this court should consider de novo review. Would you lose if we applied de novo review? No, I don't believe so. How would you win under de novo review? Because applying the law as interpreted by the Board of Immigration Appeals, this case simply does not rise to the level of exceptional and extremely unusual hardship. The hardships in this case that were presented to the immigration judge and then to the Board were essentially that of family separation and economic hardship. And there was nothing in the evidence showing that the circumstances presented in this case were outside of the norm. This case is fundamentally different than Duarte de Martinez in that the agency explicitly considered the testimony given by the elder child. It considered that Ms. Ale would no longer be able to work in the United States and her income would not benefit the family any longer. Unfortunately, Your Honor, those circumstances are common. They are not unique in cases where a parent is removed from the United States. So in this case, truly under any standard of review, because of the words used by Congress in the statute and the Board's arguably generous interpretation of those words where they were not defined in the statute, comparing it to the prior extreme hardship standard, but also the prior exceptional and extremely unusual hardship standard that was higher the hardships in this case simply do not reach the statutory standard of exceptional and extremely unusual hardship. And I would use my final minutes to point out that the dangerousness of Guatemala is not in dispute. However, the petitioner did not rely on that fact when she appealed to the Board. In her brief to the Board, she makes no mention of the country conditions evidence or how conditions in Guatemala that would directly affect her would affect her children. She relied on the unfortunate reality of a parent being removed resulting in family separation and economic hardship. So under any standard of review, but in particularly under the compelling evidence standard of review of substantial evidence, this Court should deny the petition for review. If there are no further questions, I'll cede the remainder of my time. Thank you. Thank you. Thank you, Counsel. At this time, would Counsel for the Petitioner please reintroduce himself for his rebuttal. Randy Olin from Missoula. Let me just comment very briefly on the last thing that my sister said, that Missoula didn't rely on going back to Guatemala as a tie that into the hardship to the children. She may or may not. I'd have to look back at the record. But this much I know. The children themselves testified that the concern that they would have for their mother in Guatemala, they testified to it. So whether or not Missoula did, the children did, it's in the record. Judge Thompson, I wanted to follow up a little bit on that, what you had asked me about the standard of review. And I think I've already said that for 91 years, the standard of review has been of use of discretion. Apparently the government, their argument for higher standard of review, which we all know, by the way, is because they want the compelled evidence standard of review, which is much higher than the abuse of discretion standard. But it's a curious argument, I think, to make in light of Loper Wright's complete elimination of Chevron deference, which came after Wilkinson. Wilkinson itself said, we all agree, that there has to be some degree of deference. The question is not whether or not there's deference. The question is how much deference. And Wilkinson did not state a different standard of review. And Wilkinson did not state what degree of deference. The degree of deference most appropriate to these cases is what Loper Wright itself noted in its case. And that's the Skidmore v. Swift standard. And the beauty of... Putting that aside for one second just on the standard of review, since the relief is a discretionary form of relief... I'm sorry, Judge. Since the relief is a discretionary form of relief, I understand why the standard of review for a cancellation decision is abuse of discretion. But the different components of the questions that are presented to us might raise different questions about what the standard of review is. If we have a pure fact question, then, I mean, as a jurisdictional issue aside, but pure fact questions under the INA or substantial evidence standard, you're not disputing that. I take it pure law questions are de novo under the statute. I agree. So what we're trying to figure out here is not whether an abuse of discretion with respect to the cancellation of removal itself. We're trying to figure out whether there was an error of law in the application of this particular legal standard. But you don't seem to be arguing for de novo review. Well, on a question of law, a pure question of law, I would. But isn't that what you're arguing, that this is a pure question of law, or are you not arguing that? That's a difficult question for me to answer. I think that in some ways it is a pure question of law. The issue with the word pure question, I mean, there's law questions and there's fact questions. There's no category of mixed questions under the relevant statute or standard of review, as I understand it. But the bottom line here is that the facts have to be, which obviously, Patel, we can't challenge, but they have to be applied to the legal question. And so you certainly have the facts as being relevant to it, but the ultimate determination is, I believe, a question of law. If we were to remand, is it your position that the agency relies on the facts as found originally, or is there an opportunity to decide new facts? Similarly, if there's then a petition for review in front of us, do we have to go with the make-believe because of the predictive nature of the fact-finding at the time? Do we have to go with the make-believe situation as if five years hasn't elapsed in the interim, or can they take evidence on the question, for example, of whether the older child made it into college? What's your position on that? Again, I think there may be a hybrid answer to that. Under the ordinary remand rule, it would go back to the agency for more evidence-taking. So I believe that that would be an appropriate thing to do. Thank you. Thank you, counsel. That concludes argument in this case.